UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NOELANI JAYE,

                         Plaintiff,                      Civil Case No. 24-9423

                -against-                      **COMPLAINT**
                                                        **AND JURY DEMAND**

MNG 2005, Inc. d/b/a CBD Kratom a/k/a MNG New
York Holdings, LLC; MARIA CRESPO, in her
individual and official capacity as Human Resources
Representative of CBD Kratom; JASON BRANDL,
in his individual and official capacity as Chief
Operating Officer of CBD Kratom; and PAM JONES,
in her individual and official capacity as Regional
Manager of CBD Kratom,

                        Defendants.
------------------------------------------------------------------X

      Plaintiff Noelani Jaye by her attorneys, Advocates for Justice, Chartered Attorneys, for her Complaint against Defendants MNG 2005, Inc. d/b/a CBD Kratom a/k/a MNG New York Holdings, LLC; Maria Crespo; Jason Brandl; and Pam Jones alleges as follows:

**PRELIMINARY STATEMENT**

      1.      This is an employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and 42 U.S.C. Section 1981, against Defendants MNG 2005, Inc. d/b/a CBD Kratom a/k/a MNG New York Holdings, LLC ("CBD Kratom"); Maria Crespo; Jason Brandl; and Pam Jones (hereinafter collectively "Defendants"). Plaintiff Jaye, a former Store Manager and employee of Defendant CBD Kratom was discriminated against, harassed, and subjected to a hostile work environment because of her race and gender, specifically because of her gender identity and gender expression as a Black transgender woman, which

1

culminated in her termination on May 31, 2023, after she underwent gender-affirming surgery in April of 2023. Plaintiff Jaye was a high-performing manager and increased the sales at her store 10-fold in the five months she was employed at CBD Kratom. Despite this, Plaintiff Jaye was retaliated against and unfairly targeted for performance scrutiny when she corrected Defendant's Human Resources Representative, Defendant Crespo, on her repeated misgendering of another transgender person; and again, when Plaintiff Jaye raised a concerning issue with Defendant's Black History Month campaign to Defendant's Chief Operating Officer, Defendant Jason Brandl. Plaintiff Jaye seeks damages and reasonable attorney's fees.

## JURISDICTION & VENUE

2. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 42 U.S. Code § 2000e–2 and the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

3. Venue is proper in the United States District Court of the Southern District of New York because Plaintiff Jaye resides in this District and Defendant CBD Kratom has multiple business addresses in this District.

## PARTIES

4. Plaintiff Noelani Jaye is a resident of Bronx County, New York and was at all relevant times employed by Defendant CBD Kratom.

5. Defendant MNG 2005, Inc. d/b/a CBD Kratom a/k/a MNG New York Holdings, LLC ("CBD Kratom") is a privately-owned foreign business corporation based in St. Louis, Missouri. Based on the organization's website, CBD Kratom is the largest privately owned "one-stop shop for Cannabis, Kratom, and more" with over 60 locations nationwide.

6. Defendant Maria Crespo is an individual employed by Defendant CBD Kratom as a Human Resources representative and is named here in her individual and official capacity.

7.   Defendant Jason Brandl is an individual employed by Defendant CBD Kratom as the Chief Operation Officer ("COO") and is named here in his individual and official capacity.

8.   Defendant Pam Jones is an individual employed by Defendant CBD Kratom as a Regional Manager and is named here in her individual and official capacity.

## **FACTS RELEVANT TO ALL CAUSES OF ACTION**

9.   Plaintiff Jaye is a Black transgender woman who has fully transitioned socially and is in the process of transitioning medically.

10.   Plaintiff was hired as a Store Manager at the CBD Kratom location in Williamsburg, Brooklyn on or about December 2022 as a salaried employee earning $49,000 per year.

11.   Plaintiff worked in this position until her suspension on May 27, 2023, and subsequent termination on May 31, 2023.

12.   Upon information and belief, prior to Plaintiff being hired, the Williamsburg location was the lowest performing store in the region, earning around $300-$400 in sales per day.

13.   Upon information and belief, between December 2022 and May 2023, while under Plaintiff's management, the store's sales increased 10-fold to around $3,000-$4,000 in sales per day.

14.   In or around March of 2023, Plaintiff Jaye scheduled gender-affirming surgery to make her appearance more feminine.  At around that same time, she began a dialogue with Defendant CBD Kratom, to inform them of her scheduled gender-affirming surgery on April 5, 2023.

15.   Defendant CBD Kratom informed that the only option she had was to complete an American with Disabilities Act ("ADA") application for time off as protected by the Family and Medical Leave Act ("FMLA").

16. Plaintiff's understanding at the time was that under New York law, the requirements for time off are different and less onerous than those under federal law.

17. Defendant CBD Kratom sought to discourage Plaintiff from requesting an accommodation by not providing her with the necessary information or follow-up, and Plaintiff Jaye expressed this frustration with Defendant CBD Kratom.

18. As a result of Defendants actions, Plaintiff did not seek time off or an accommodation before her surgery.

19. Plaintiff provided medical documentation to Defendant CBD Kratom upon Plaintiff's return to work in or around April 2023 which specified her temporary limitations of standing, sitting, and wearing loose-fitting clothing and comfortable footwear, including Crocs.

20. Plaintiff's medical provider also indicated that Plaintiff would need to reduce her work hours for the 3-6 weeks after surgery, and so Plaintiff requested an accommodation of 30 hours of work per week instead of her usual 40-45 hours per week.

21. Defendant CBD Kratom agreed to decrease Plaintiff's hours but only with a reduction in salary.

22. Plaintiff's supervisor Rachel Roth-Smith, argued against the pay cut on behalf of Plaintiff, and Defendants agreed to allow Plaintiff to work remotely one day a week without a salary reduction.

23. Upon Plaintiff's return to work, she was confronted by Defendant Crespo, the HR Representative for Defendant CBD Kratom, and asked inappropriate and invasive questions about Plaintiff's transition, surgery, and body more generally, in the presence of other staff, publicly humiliating her.

24. During this conversation, Defendant Crespo mentioned knowing another person who transitioned to female, and repeatedly referred to this person as "he" and "him." When Plaintiff corrected Defendant Crespo, she responded that Plaintiff would have to "bear with [her]" because she was "just learning about this stuff."

25. As a human resources representative, Defendant Crespo should be well informed about "this stuff."

26. Defendant CBD Kratom and Defendant Crespo began to scrutinize Plaintiff's work more intensely than before her gender-affirming surgery, and in drastic contrast to how they approached the work of cis-gender white employees and store managers.

27. For example, Defendant Crespo questioned Plaintiff's ability to hold her employees accountable for their actions and her general abilities as a supervisor despite the Williamsburg location performing exceptionally well under Plaintiff's management. Other supervisors at CBD Kratom were not as severely scrutinized or expected to hold their team similarly accountable.

28. Defendants began to make small issues into larger ones as a pretext for taking adverse action against Plaintiff, which is especially concerning as she was still recovering from surgery.

29. Defendant Crespo accused Plaintiff of violating the dress code, despite Plaintiff wearing the required company shirt but wearing loose-fitting pants and the comfortable footwear Crocs, which was consistent with the accommodations required by Plaintiff's medical provider post-surgery.

30. Defendant Crespo also chastised Plaintiff for eating behind the store counter instead of the basement. Plaintiff had already alerted management to a rodent infestation in the basement which made it unsuitable for employee meal breaks.

31. In these interactions, and others, Defendants held Plaintiff to arbitrary rules and chose to treat her differently from other employees in similar situations, and differently from how they previously treated her before her gender-affirming surgery.

32. In addition to the different treatment to which Plaintiff was subjected as a transgender woman, she was also targeted because of her race.

33. Plaintiff had previously complained to Defendant Jason Brandl, the COO, about certain images CBD Kratom utilized.

34. For example, Plaintiff informed Brandl that including a white power fist in the Black History Month campaign was inappropriate for the occasion and should be changed.

35. In response, Defendant Brandl, a white cisgender man, addressed the issue publicly at a manager meeting by stating that any person who had an issue with the Black History Month Campaign should have brought it up at a Diversity Equity and Inclusion Board ("DEIB") meeting instead of "criticizing" it at the last minute.

36. Defendants CBD Kratom and Defendant Brandl effectively shut down Plaintiffs' feedback as a Black transgender woman on a Black History Month Campaign and placed the burden of their own inclusion on disenfranchised employees instead of the party with true responsibility - themselves.

37. When Plaintiff attempted to participate in Defendants' Juneteenth campaign as the only Black transgender woman, she was isolated and not included due, in part, to concerns that she had raised in Defendants' Black History Month Campaign earlier in 2023.

38. On May 27, 2023, while at the tail-end of her recovery, Plaintiff was suspended by Defendant Crespo and Defendant Jones based on spurious claims of performance deficiency, and Plaintiff was not informed of the details directly at that time.

39. Plaintiff initially found out about Defendant's purported reasons for her suspension because Defendant Crespo again publicly humiliated Plaintiff by gossiping about the reasons why Plaintiff was suspended to her coworkers and staff.

40. Defendant Crespo told Plaintiff's coworkers and staff that Plaintiff was being disciplined because her team used cell phones on the shop floor in violation of Defendant CBD Kratom's policy; that it was inappropriate for Plaintiff to speak up about the diversity and inclusion deficiencies she observed at Defendant CBD Kratom; and that it was improper for Plaintiff to raise the difficulties she experienced in seeking a post-surgery accommodation during a summit for New York area managers.

41. However, Defendant CBD Kratom did not uniformly enforce any cell phone policy at its numerous locations and Plaintiff did not hold her team to different standards than other locations as to do so would be arbitrary and unfair.

42. In addition, the summit for New York area managers was intended as a forum for managers to share information with each other and with the company, which Plaintiff did, and was subsequently terminated for. Deficiencies in the accommodation process are valuable knowledge for both employees and management and should not be arbitrarily excluded from the conversation.

43. Defendant Crespo told Plaintiff that it made other managers "uncomfortable" when she spoke about her accommodation request, which was for gender-affirming surgery.

44. On May 31, 2023, Defendant Crespo, Defendant Jones, and Rachel Roth-Smith informed Plaintiff that she was terminated, citing "problems" with her work as noted above.

## AND AS FOR A FIRST CAUSE OF ACTION
### (Title VII, 42 U.S. Code § 2000e–2)

45. The allegations contained in the paragraphs above are incorporated by reference as though fully set forth herein.

46. Defendants were Plaintiff's employer within the meaning of 42 U.S.C. § 2000e-2.

47. Defendants discriminated against, harassed, and subjected Plaintiff to a hostile work environment on the basis of her race and gender identity or expression in violation of these laws.

48. When Plaintiff complained about the illegal discrimination, harassment and hostile work environment, Defendant retaliated against her by terminating her.

49. By reason of Defendants' discrimination, harassment, hostility and retaliation, Plaintiff is entitled to all remedies available, Plaintiff is entitled to all remedies available for violations of Title VII.

## AND AS FOR A SECOND CAUSE OF ACTION
**(New York State Human Rights law)**

50. The allegations contained in the paragraphs above are incorporated by reference as though fully set forth herein.

51. Defendants were Plaintiff's employer within the meaning of the New York State Human Rights Law ("NYSHRL"), and have discriminated against, harassed, and subjected Plaintiff to a hostile work environment on the basis of her race and gender identity or expression in violation of New York Executive Law § 296.

52. Defendants retaliated against Plaintiff for complaining about race and gender identity and expression-based discrimination, harassment and hostility in violation of New York Executive Law § 296.

53. Defendants caused, attempted to cause, contributed to, or caused the continuation of retaliation against Plaintiff in violation of NYSHRL by failing to take remedial measures.

54. The individual Defendants aided and abetted in discriminating, harassing, and subjecting Plaintiff to a hostile work environment on the basis of her race and gender identity or expression in violation of New York Executive Law § 296.

55. By reason of Defendants' discrimination, harassment, hostility and retaliation, Plaintiff is entitled to all remedies available, Plaintiff is entitled to all remedies available for violations of New York Executive Law § 296.

## AND AS FOR A THIRD CAUSE OF ACTION
**(New York City Human Rights Law)**

56. The allegations contained in the paragraphs above are incorporated by reference as though fully set forth herein.

57. Defendants were Plaintiff's employer within the meaning of the New York City Human Rights law ("NYCHRL"), and have discriminated against, harassed, and subjected Plaintiff to a hostile work environment on the basis of her race and gender identity in violation of NYC Administrative Code § 8-107(1)(a)(2), (1)(a)(3), and (6).

58. Defendants retaliated against Plaintiff for complaining about race and gender identity-based discrimination, harassment and hostility in violation of NYC Administrative Code § 8-107(7).

59. Defendants caused, attempted to cause, contributed to, or caused the continuation of retaliation against Plaintiff in violation of NYCHRL by failing to take remedial measures.

60. The individual Defendants aided and abetted in discriminating, harassing, and subjecting Plaintiff to a hostile work environment on the basis of her race and gender identity or expression in in violation of NYC Administrative Code § 8-107(1)(a)(2), (1)(a)(3), and (6).

61. The individual Defendants aided and abetted in retaliating against Plaintiff for complaining about race and gender identity-based discrimination, harassment and hostility in violation of NYC Administrative Code § 8-107(7).

62. By reason of Defendants' discrimination, harassment, hostility and retaliation, Plaintiff is entitled to all remedies, Plaintiff is entitled to all remedies available for violations of NYC Administrative Code § 8-107(1)(a)(2), (1)(a)(3), (6), and (7).

**AND AS FOR A FOURTH CAUSE OF ACTION**
**(42 U.S.C. § 1981)**

63. The allegations contained in the paragraphs above are incorporated by reference as though fully set forth herein.

64. Defendants are subject to 42 U.S.C. § 1981, and have discriminated against, harassed, and subjected Plaintiff to a hostile work environment on the basis of her race and gender identity.

65. Plaintiff is a member of a protected class who has been subject to discrimination and discriminatory practices as set forth above that has deprived her of their protected right to enjoy all benefits, privileges, terms and conditions of her contractual employment relationship based upon her race and gender identity.

66. Defendants' interference with Plaintiff's rights is intentional, malicious and in reckless disregard of Plaintiff's protected rights.

67. As a result of Defendants' discrimination, Plaintiff has suffered injury to her career, emotional distress, economic damage and other injury.

68. By reason of Defendants' unlawful discrimination, harassment, hostility and retaliation, Plaintiff has been damaged and is entitled to all remedies available, and Plaintiff is entitled to all remedies available for violations of 42 U.S.C. § 1981.

## JURY DEMAND

69. Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff pray that judgment be entered:

1. Ordering Defendants to make Plaintiff whole by providing her with appropriate lost earnings and benefits, and other affirmative relief;

2. Awarding Plaintiff emotional distress damages in the sum of no less than $250,000;

3. Awarding other compensatory damages to Plaintiff in an amount to be determined at trial but in no event less than $250,000;

4. Awarding litigation costs and expenses, including, but not limited to reasonable attorneys' fees, to Plaintiff; and

5. Granting Plaintiff such other and further relief as the Court deems proper and just.

Dated: New York, New York
       December 10, 2024

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
Attorneys for Plaintiffs

By: */s/ Laine Alida Armstrong*
       Laine Alida Armstrong
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400
laine@advocatesny.com